UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

WITHOUT WALLS INTERNATIONAL
CHURCH, INC.,

Debtor.
_____/

Chapter 11

Case No. 8:14-bk-2567-MGW

**ORDER ON DEBTOR'S MOTION FOR ORDER AUTHORIZING
THE SALE OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS
AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §§ 363, 1123 AND 1129,
(LAKELAND PREMISES)**

THIS CASE came on for hearing before the Court on July 9, 2014, at 9:30 a.m. (the "Hearing"), upon the Debtor's Motion for Order Authorizing the Sale of Property Free and Clear of all Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363, 1123 and 1127, as to the Lakeland Premises [Doc. 94] (the "Sale Motion")[1].

At the Hearing, counsel for the Debtor advised the Court an auction of the Lakeland Premises was conducted on July 8, 2014 at 10:00 a.m. at the offices of Stichter, Riedel, Blain & Prosser, P.A. pursuant to the Bid Procedures Order. ECCU was the highest bidder at the auction on account of its credit bid and the submission of an Agreement for Purchase and Sale of Property dated July 3, 2014 (the "ECCU Purchase Agreement"), providing for the sale by the Debtor, and the purchase by ECCU, pursuant to 11 U.S.C. §§ 363 and 1129, of the Lakeland Premises (as defined in the ECCU Purchase Agreement) of the Debtor, free and clear of any and

---

[1] Unless otherwise defined herein, capitalized terms used herein shall have the meaning ascribed to such terms in the Sale Motion. The terms "Permitted Encumbrances" and "Assumed Liabilities" referenced herein shall have the meanings ascribed to such terms in the ECCU Purchase Agreement. A separate order has been entered by the Court approving the sale of the Tampa Premises.

all claims (including "claims" as defined in § 101(5) of the Bankruptcy Code), mortgages, pledges, liens, security interests, interests, charges, encumbrances, setoffs, recoupments, liabilities, debts, indebtedness, costs, damages, judgments or obligations of any character whatsoever and whenever arising, either before or after the Petition Date (collectively, the "Encumbrances"), except for the Assumed Liabilities and Permitted Encumbrances.

ECCU may direct the Debtor to close a sale transaction under a purchase agreement substantially similar to the form of Purchase Agreement (the "Form Purchase Agreement") attached to the order granting the Bid Procedures Motion (the "Bid Procedures Order") [Doc. No. 71] to a third party purchaser as ECCU's designee provided that the consummation of the sale occurs no later than 10:00 a.m. on July 25, 2014 and that any such sale shall be governed by the terms set forth in the Bid Procedures Motion [Doc. No. 52] and Debtor's First Amended Plan of Reorganization Under Chapter 11 of Title 11, United States Code dated as of July 2, 2014, as may be amended (the "Plan") [Doc. No. 131]. In the event that no closing with a third party purchaser takes place by 10:00 a.m. on July 25, 2014, the Debtor shall transfer title to ECCU, or ECCU's designee, free and clear of any and all Encumbrances except for the Assumed Liabilities and Permitted Encumbrances. Tranzon Driggers is authorized to work with ECCU and the Debtor to assist in securing a third party bidder for the Lakeland Premises. For all prospective purchasers who have registered with Tranzon Driggers or who submit an offer for the Lakeland Premises and such sale is consummated by July 25, 2014, any sale to such purchaser shall result in a fee to Tranzon Driggers as if such sale had taken place at the auction, and in such amount as provided by the Tranzon Driggers retention order.

The Court finds that notice of the Sale Motion and the Hearing to creditors of the Debtor and other parties in interest was adequate and sufficient, that it complied in all respects with the

Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court and otherwise satisfies the requirements of due process.

At the Hearing, for the reasons announced on the record, the Court approved the sale of the Lakeland Premises as set forth in the ECCU Purchase Agreement for the purchase of the Lakeland Premises by ECCU free and clear of Encumbrances, except for the Assumed Liabilities and Permitted Encumbrances. The Court further approved the sale of the Lakeland Premises to a third party purchaser as ECCU's designee under a purchase agreement substantially similar to the Form Purchase Agreement provided the sale is consummated no later than 10:00 a.m. on July 25, 2014 and is governed by the terms set forth in the Bid Procedures Motion and the Plan.

The Court finds that, based upon the entire record:

(a) The Debtor has advanced sound and sufficient business reasons and it is a reasonable exercise of the Debtor's business judgment pursuant to § 363 of the Bankruptcy Code to sell the Lakeland Premises to ECCU, in accordance with the terms of the ECCU Purchase Agreement. The ECCU Purchase Agreement is further justified by the circumstances described in the Sale Motion and the representations and proffers offered in support of the Sale Motion at the Hearing and at previous hearings before this Court.

(b) The Debtor and ECCU have each acted in good faith and without collusion or fraud in connection with the preparation, negotiation and execution of the ECCU Purchase Agreement and the subject matter of the Sale Motion and this Order. Without limiting the foregoing, the ECCU Purchase Agreement has been negotiated in good faith, at arm's-length, and not by any means forbidden by law. The Court specifically finds that ECCU has acted in good faith in pursuing and closing the transactions contemplated under the ECCU Purchase

Agreement for purposes of § 363(m) of the Bankruptcy Code or otherwise. The Court further finds that ECCU is not an affiliate or insider of the Debtor.

      (c)      The Debtor has articulated good and sufficient business justifications for the sale pursuant to §§ 363(b) and 363(f) of the Bankruptcy Code.

      (d)      The sale to ECCU satisfies one or more of the requirements of § 363(f) of the Bankruptcy Code as to all secured creditors of the Debtor.

      (e)      The offer evidenced by the ECCU Purchase Agreement constitutes the highest and best offer for the Lakeland Premises.

      (f)      The relief requested in the Sale Motion (including, without limitation, the approval of the ECCU Purchase Agreement and the sale of the Lakeland Premises to ECCU) is a necessary and appropriate step toward enabling the Debtor to successfully conclude this Chapter 11 case as part of its plan of reorganization, as amended, filed with the Court.

      (g)      The sale of the Lakeland Premises to ECCU is in the best interests of the Debtor, its creditors and estate and all parties in interest.

The Court considered the Sale Motion and the ECCU Purchase Agreement, together with the record and the arguments of counsel at the Hearing and throughout this Chapter 11 case, and the testimony proffered by counsel at the Hearing, and being otherwise duly advised in the premises, and for the reasons announced on the record at the Hearing, finds that the relief requested in the Sale Motion is necessary and appropriate and is in the best interests of the Debtor, its creditors and estate and all parties in interest, and that the Sale Motion is well taken and shall be granted in accordance with the terms and conditions set forth herein. Accordingly, it is

      **ORDERED**:

4

1. The Sale Motion is GRANTED to the extent set forth herein below.

2. The findings of fact set forth above in this Order be, and the same hereby are, ratified and adopted as findings of this Court and are incorporated herein. To the extent any of the findings of fact set forth herein are deemed to be conclusions of law, then such findings are hereby confirmed as conclusions of law.

3. The offer by ECCU set forth in the ECCU Purchase Agreement to purchase the Lakeland Premises is the highest and best offer for the purchase of the Lakeland Premises and represents fair and adequate consideration for the Lakeland Premises.

4. The form and substance of the ECCU Purchase Agreement (including any modifications thereto included in this Order) and the transactions contemplated thereby are approved in all respects. After the date of entry of this Order, the Debtor and ECCU may enter into any non-material amendment or modification to the ECCU Purchase Agreement that is not adverse to the Debtor's estate without the need of further notice and hearing or Court order.

5. The execution, delivery and performance of the ECCU Purchase Agreement by the Debtor are hereby ratified and authorized in all respects.

6. Except as set forth in paragraph 7 below, ECCU shall close on the sale transaction as required by the ECCU Purchase Agreement no later than July 25, 2014 with the Debtor transferring title of the Lakeland Premises to ECCU, or ECCU's designee, free and clear of any and all Encumbrances except for the Assumed Liabilities and Permitted Encumbrances. The date of the closing shall be referred to herein as the "Closing Date".

7. ECCU may direct the Debtor to close a sale transaction under a purchase agreement substantially similar to the Form Purchase Agreement to a third party purchaser as ECCU's designee provided that the consummation of the sale occurs no later than 10:00 a.m. on

July 25, 2014 and that any such sale shall be governed by the terms set forth in the Bid Procedures Motion and the Plan. The third party purchaser shall be deemed a designee of ECCU and the provisions of paragraphs 8-24 of this Order shall apply to such third party purchaser as ECCU's designee; *provided*, *however*, should the third party purchaser be an insider of the Debtor, the Court makes no finding, without prejudice to the purchaser seeking such a determination from the Court, that the purchaser is entitled to the protections afforded by § 363(m) of the Bankruptcy Code.

8. Tranzon Driggers is authorized to work with ECCU and the Debtor to assist in securing a third party bidder for the Lakeland Premises. For all prospective purchasers who have registered with Tranzon Driggers or who submit an offer for the Lakeland Premises and such sale is consummated by July 25, 2014, any sale to such purchaser shall result in a fee to Tranzon Driggers as if such sale had taken place at the auction, and in such amount as provided by the Tranzon Driggers retention order.

9. Subject to the terms and conditions of the ECCU Purchase Agreement, the Debtor shall be, and hereby is, authorized and directed to sell, transfer, assign and deliver the Lakeland Premises to the Purchaser free and clear of any and all Encumbrances, subject to the Permitted Encumbrance and Assumed Liabilities. The Debtor is authorized to execute and deliver all documents (both before and after the closing) and to take all appropriate actions necessary to evidence and consummate the closing on the sale of the Lakeland Premises to ECCU and the transactions contemplated thereby.

10. The ECCU Purchase Agreement is valid and enforceable and binding on ECCU. ECCU shall pay and perform all of the Assumed Liabilities listed in the ECCU Purchase Agreement.

11. The transfer of the Lakeland Premises to ECCU will be a legal, valid, and effective transfer of the Lakeland Premises and will vest ECCU with all right, title and interest of the Debtor in and to the Lakeland Premises, free and clear of all Encumbrances of any kind or nature whatsoever, other than the Permitted Encumbrances and the Assumed Liabilities; provided, however, that all amounts required to be paid to, and the general releases required to be delivered to, ECCU pursuant to the Bid Procedures Motion shall be paid to and delivered to ECCU, respectively, simultaneously with the closing of the sale of the Lakeland Premises.

12. Except as otherwise provided in the Order of the Bankruptcy Court confirming the Debtor's Plan or the ECCU Purchase Agreement, all person and entities (and their respective successors and assigns) including, but not limited, all debt security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Claims (including "Claims" as defined in § 101(5) of the Bankruptcy Code), whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated, arising under or out of, in connection with, or in any way relating to, the Debtor, the Lakeland Premises, the operation of the Debtor's operations prior to closing, or the transfer of the Lakeland Premise to ECCU or ECCU's designee, are hereby forever barred, estopped, and permanently enjoined from asserting such Claims against ECCU, its successors or assigns, its property, or the Lakeland Premises. No such persons or entities shall assert against ECCU or its successor in interest any liability, debt, claim or obligation arising from, related to or in connection with the ownership or operation of the Lakeland Premises prior to the closing.

13. If any person or entity that has filed financing statements or other documents or agreements evidencing Encumbrances on the Lakeland Premises shall not have delivered to the Debtor at or prior to the closing, in proper form for filing and executed by the appropriate

parties, termination statements, instruments of satisfaction, or releases of Encumbrances which the person or entity has with respect to the Lakeland Premises, the Debtor or ECCU, as the case may be, is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Lakeland Premises.  ECCU is hereby authorized to file, register or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances on the Lakeland Premises of any kind or nature whatsoever.

14. The Debtor and ECCU have acted in good faith, the terms and conditions of the ECCU Purchase Agreement are fair and reasonable and have been negotiated and agreed upon in good faith on the part of the Debtor and ECCU, and ECCU is an arm's length purchaser who is purchasing the Lakeland Premises in good faith.  The Purchase Price constitutes reasonably equivalent and fair market value under the Bankruptcy Code and applicable non-bankruptcy law. Accordingly, ECCU shall be entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code.

15. Upon consummation of the sale to ECCU, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Lakeland Premises to ECCU free and clear of all Encumbrances except for the Permitted Encumbrances and Assumed Liabilities.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the ECCU Purchase Agreement.

16. The sale of the Lakeland Premises by the Debtor is in contemplation of, a necessary condition precedent and essential to, and necessary to consummate and implement the

confirmation of the Debtor's Plan in this case and, accordingly, constitutes a transfer to which § 1146(a) of the Bankruptcy Code applies. The Debtor and the Purchaser shall be entitled to any and all rights and benefits that may be afforded to them by § 1146(a) of the Bankruptcy Code. Pursuant to §1146(a) of the Bankruptcy Code, the sale or transfer of the Lakeland Premises or the making, delivery or recording of any instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the revesting, transfer or sale of any real or personal property of, by or in the Debtor pursuant to, in implementation of or as contemplated by the Plan, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to accept and abide by the terms of this Order and to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

17. Any real estate taxes related to the Lakeland Premises accruing after the Closing Date shall be the responsibility of ECCU. ECCU shall take title to the Lakeland Premises subject to real estate taxes relating to the Lakeland Premises currently outstanding and accruing after the Closing Date and shall indemnify the Debtor with respect thereto. Upon the consummation of the closing on the purchase of the Lakeland Premises, any taxing authorities or governmental agencies having jurisdiction over the Lakeland Premises shall have no further claim against the Debtor or the estate for real estate taxes currently outstanding or accruing after the Closing Date.

18. The Debtor shall not be liable for any brokerage commissions or finder's fees with respect to the sale of the Lakeland Premises.

19. Notice of the Sale Motion and the Hearing to creditors of the Debtor and other parties in interest was adequate and sufficient, complied in all respects with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court and otherwise satisfies the requirements of due process.

20. With the exception of any obligations of the Purchaser under the ECCU Purchase Agreement or this Order, including the Assumed Liabilities and Permitted Encumbrances, ECCU does not and shall not be deemed to, pursuant to the ECCU Purchase Agreement or otherwise, assume, agree to perform, or pay any Encumbrances, liabilities, claims, debts or obligations of the Debtor. ECCU shall not be, nor shall it be deemed to be, a successor or successor in interest to the Debtor by reason of any theory of law or equity, and ECCU shall not have any successor or transferee liability of any kind or character.

21. The terms and provisions of this Order shall be binding upon the Debtor and its estate, creditors and stakeholders, ECCU, all parties to executory contracts and leases to be rejected or otherwise not assumed by the Debtor, and all other parties in interest and the respective successors and assigns of each of the foregoing (all of the foregoing whether known or unknown), including any trustee subsequently appointed for or on behalf of the Debtor under the Bankruptcy Code in this Chapter 11 case or upon a conversion to Chapter 7.

22. The 14-day stays set forth in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure are hereby waived, for good cause shown. This order shall be deemed effective immediately upon its being entered on the docket for this case.

23. The failure specifically to include any particular provisions of the ECCU Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the ECCU Purchase Agreement be authorized and approved in its entirety (as modified herein). To the extent there is any inconsistency between the provisions of this Order and the terms of the ECCU Purchase Agreement or the Sale Motion, the provisions of this Order shall control.

24. Upon its request, a copy of the closing documents will be furnished to the U.S. Trustee's Office.

25. This Court shall retain jurisdiction (a) to interpret, implement and enforce the provisions of this Order, and (b) to interpret, implement and enforce the terms and provisions of the ECCU Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects.

**DATED:** July 11, 2014

MICHAEL G. WILLIAMSON
United States Bankruptcy Judge

Attorney Elena Paras Ketchum is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of this Order.